THE TEXAS COMPANY, A CORPORATION, APPELLANT, v. THE ASPHALT DISTRIBUTING COMPANY, A CORPORATION, GARNISHEE OF EMMETT WATSON AND J. R. WATSON, RESPONDENT.—33 S. W. (2d) 1003.

St. Louis Court of Appeals. Opinion filed January 6, 1931.

*Bryan, Williams, Cave & McPheeters* for appellant.

*Barth & Baron* for respondent, garnishee.

BECKER, J.—This a garnishment proceeding brought by The Texas Company against The Asphalt Distributing Company as garnishee of Emmett Watson and J. R. Watson.' The writ of garnishment was served on October 12, 1928, at which date more than $7000 remained unsatisfied upon a judgment obtained by the Texas Company against the Watsons.

The case was tried without the intervention of a jury and the court found that the garnishee had in its possession moneys belonging to and due defendants in the sum of $234.33 subject to garnishment, and ordered the garnishee to pay said sum, together with a small amount of interest, into the registry of the court, the total amount of the judgment being for $244.77. Plaintiff in due course appeals.

An examination of the pleadings discloses that plaintiff filed the conventional interrogatories, to which the garnishee answered by denials. Thereupon plaintiff filed a denial of the garnishee's answer, specifically denying the allegation that the garnishee was not indebted to the defendants, and affirmatively alleging that at the time of the service of the writ of garnishment both of the defendants were employed by the garnishee, one at a salary of $350, and the other $250 per month, and that the defendants had continued in the employ of the garnishee until February 15, 1929.

The evidence discloses that the Watsons were officers of the Asphalt Distributing Company, garnishee, and in active charge of disbursements; that on October 12, 1928, when the writ of garnishment was served upon it, the salary of Emmett Watson was $350 per month, and that of J. R. Watson $250 per month; that during the months of October, November and December, 1928, as had been their custom prior thereto, they issued checks of the company from time to time to persons to whom they individually were indebted for their current living expenses, and that at the end of each of these months they credited their personal accounts with the company with the amounts of their respective salaries. Both of the Watsons testified that they did not know exactly how their accounts with the company stood at any time between October 12 and December 31, 1928, but that they had checked out approximately the amounts of their salaries each month in the manner above described, and that on December 31, 1928, their accounts with the company were balanced.

It further appears that Emmett Watson remained in the employ of the company until February 28, 1929, and that on January 15th and 31st, and February 15th, he received checks from the company, each in the sum of $175, to cover his salary to said dates. He testified that he had never been paid any salary for the period of

February 15th to the 28th. J. R. Watson remained in the employ of the company until about the 10th of January, 1929, at which time he received the company's check approximating $80 to cover his accrued salary in full. Each of the Watsons, over objections of plaintiff, testified that he was a resident of the city of St. Louis and the head of a family. The Watsons further testified they would claim no exemptions in this proceeding, and that they had not authorized the Asphalt Distributing Company to set up any exemptions for them.

There is no controversy but that each of the Watsons, within a few months after the incorporation of the Asphalt Distributing Company, began to draw the company's checks to their own order whenever they needed money, and at the end of each month credited their accounts with the amounts of their salaries.

The sole question we need consider here is the contention of the appellant that though the trial court evidently found that the garnishee became indebted to the judgment debtors in the amount of $2343 after service of the writ of garnishment, yet the trial court erred in finding only ten per cent of that amount subject to garnishment.

In support of this contention appellant argues: First, that since the only issue raised under the pleadings was whether the garnishee was indebted to the defendants, the trial court erred in admitting, over plaintiff's objections, evidence tending to show that the judgment debtors were residents of Missouri and heads of families; second, that since there are no exemptions on execution except as provided by statute, and the judgment debtors have made no selection of their salaries as exempt, the court erred in holding that only ten per cent of their salaries were subject to garnishment; third, that where a judgment debtor affirmatively waived his exemptions, exemptions to which the judgment debtor might otherwise have been entitled will not protect the garnishee.

We readily agree that under section 1864, Revised Statutes 1919, in garnishment proceedings, the issue or issues made up by the denial and reply shall be the sole issue or issues tried, and that under the pleadings here before us the sole issue made was as to whether or not the garnishee became indebted to the judgment debtors after October 12, 1928. We cannot, however, agree with appellant that because the trial court found that the garnishee had become indebted to the judgment debtors in the sum of $2343 after service of the writ of garnishment, it erred in finding only ten per cent of that amount subject to garnishment.

Section 1848, Revised Statutes Mo. 1919, among other things, provides that "nor shall any person be charged as garnishee for more than ten per cent of any wages due from him to a defendant in his employ for the last thirty days' service; provided, such employee

is the head of a family and a resident of this State. . . ." In this action, therefore, the garnishee, under said section, could not be charged more than ten per cent of the wages due from it to the judgment debtor for the last thirty days' service. With reference to a similar situation this court, in Koppen v. Union Iron & Fdry. Co., 181 Mo. App. 72, l. c. 87, 163 S. W. 560, said: "It is argued that the garnishee had not paid defendant but owed him for the twenty months intervening from the service of the summons and until the filing of the answer by the garnishee. Whether it had paid defendant or had not paid him, is immaterial. The ninety per cent of wages exempt is so absolutely exempt that it is not tied up in the hands of the garnishee, but is of the property of the defendant debtor. If not paid over to him he has his right of action (Rood on Garnishment, sec. 95), and would be entitled to recover, subject to the right of the garnishee to hold it pending claims against it in his hands, to protect himself against double payment."

Although the garnishee, in answering the interrogatories filed by the plaintiff, did not set up the exemption rights of the judgment debtors, yet the garnishee was properly permitted to show that each of the judgment debtors was a resident of the State, and the head of a family, thus bringing the garnishee within the provisions of section 1848, Revised Statutes 1919, supra, which makes him chargeable as garnishee for not more than ten per cent of the wages due him from it to the judgment debtors in the instant case.

In Barnes v. Wm. Waltke & Co., 135 Mo. App. 488, 116 S. W. 7, a garnishment proceeding in which it was charged that the garnishee and the defendant judgment debtor fraudulently entered into an agreement whereby the judgment debtor was paid his wages in advance, though we found that the evidence justified a finding that the arrangement for payment of his wages in advance was fraudulent and intended to prevent the levy on his wages by garnishment, yet we held that where the defendant in such a case was the head of a family, the arrangement to pay wages in advance was not fraudulent as to that part of his wages which were exempt, so that the garnishee was liable under the statute for only ten per cent of the wages which would have been due but for the fraudulent arrangement. And in that case, with reference to the contention that since salary exemptions were not mentioned in the garnishee's answer the exemptions were waived, we ruled that "no doubt it would be better to call attention to such a fact in answering, even though the interrogatories made no inquiry about it, as these before us made none; but we decline to hold that the omission rendered the exemption unavailable to the garnishee as a defense, since the record contains proof of the essential facts that Mathias was head of a family and resident of the State, and this evidence was palpably introduced to prove the immunity of all but ten per cent of his

wages from levy. The immunity was asserted by the testimony and in the motion for new trial, which alleged an excessive judgment.''

Under the evidence in the case before us the trial court property found that the sum of $2433.30 had been paid by the garnishee (in fact the judgment debtors, as officers of the garnishee, themselves issued the checks of the corporation) to the judgment debtors as wages during the period of time from the serving of the writ of garnishment to the date of the filing of the garnishee's answer to the interrogatories, and that of that amount the garnishee was liable under section 1848 to the plaintiff to an amount of ten per cent thereof.

This disposes of the several assignments of error brought here for review. Finding no error prejudicial to the rights of the plaintiff the judgment should be affirmed. It is so ordered. *Haid, P. J.,* and *Nipper, J.,* concur.